Judge Robertson
delivered the opinion of the Court.
This is a writ of right, prosecuted by Conn’s heirs vs. Gaines. The demandant’s, count on the seisin of their ancestor. The tenant pleaded, 1st. In abatement, that he was not tenant of the freehold. 2d. In bar, that he held the best right.
To the first plea, the deinandant replied that the tenant had entered upon, and held the land; claiming it as his own, and that he held it in his own right; and notas tenant of George Ruddle; as he had averred in his plea.
The jury found a verdict for the demandant, and the court rendered judgment accordingly.
The facts were agreed, from which it appears, that the ancestor of the demandants, obtained a patent for the land, on the 12th of November, 1783, and settled upon it, (but not within the interference) in 1784; that a patent for a part of the same land, patented to Thomas Conn, the ancestor, issued to Isaac Ruddle, and Mounts Bird, on the 10th of December, *105 ‘¿784; that George Ruddle, claiming the land patented to J. Ruddle and Bird, entered upon,and occupied it, in 1788, and that the possession under this patent has been continued ever since. ' That a part of the land which is covered by both patents, has been in the actual occupancy of those who claimed under Ruddle’s patent, ever since the entry of G. Ruddle. That Thomas Conn never had “possessio-nem pedis,” of any part of the land covered by Rud-dle’s patent; that in 1804, he conveyed all his title to the land covered by his patent to John Conn and David' Flournoy, who recónveyed to him the same land, in 1807; that Gaines purchased the land, on which Ruddle lived, in 1794; shortly afterwards, entered on it, and has ever since resided on it. That he held Ruddle’s bond for a title, but he disclaimed having any deed, and there was no evidence that he had, except, what the law might presume. Isaac Ruddle, had conveyed to George Ruddle, but there is no other evidence of a conveyance by Bird, than What might be presumed-.
Plea,in a-hatement, not tenant of the freehold. Replication, that tenant claimed the landjin controversy, as his own, defective, not answering the negation of the plea.
*105 Several questions are presented by these facts. The first which we shall notice, is the effect of the plea in abatement, the sufficiency of the replication to it, and the effect of the evidence, upon the issue attempted to be made upon it.
The statute of Virginia, of 1786, and that of Kentucky, of 1798, (atranscript from the former) for reforming the method of proceeding in writs of right; I. Dig. 66, does not affect the right existing at common law, to plead in abatement. Green vs. Liter, VIII. Cranch, 231. Non tenure, joint tenancy, several tenancy, never tenant of the freehold, are all pleadable in abatement of a writ of right. Booth on Real Actions, 28.
The plea therefore was good»
The replication however, is scarcely sufficient. It does not traverse the negative and issuable affirmation of the plea. It does not aver that Gaines is tenant of the freehold; but simply, that he claimed the land as his own. This he might do, and not own the freehold. Therefore the issue was immaterial.
What title necessary in demandant, ■what in tenant, to the maintaining and prosecut-' in sr a writ of 'tight.
But if the issue had been good, was the evidence sufficient to authorize a verdict upon it, for the de-mandants?
A writ of right can be maintained by none who bold any interest less than a freehold, and against a tenant of the freehold only. Seethe authorities cited supra.
“If the tenant do not hold any part of the land,i. e. be not tenant of the freehold, the writ shall abate,” because, as Bracton says, lib. 5; c. 27; f. 431. mittere nan protest quod non hubet, et ila cadit breve,n Booth, 29,
“A freehold estate confers on its owner, the right of defending the title for that inteiest which he had in the land, and for the interest of all other persons? whose estates were dependent on his ownerhip, IV. Burrow, 167.”
“A judgment against him, (the tenant) on a demand of the right and inheritance was, in effect, a judgment against those in reversion or remainder, and took the seisin from them, rendering it necessary, that they should become demandants, instead of being defendants of the right. Preston on Estates, 206.”
Hence, “it was a forfeiture for a tenant for life, to join the mise, on the mere right, in a writ of right, ib. and I. Inst. 381.
The object of the-writ of right is to try the whole title. Hence as well the tenant, as the demand-ant, should have a freehold interest, so that all those whose rights are depdendent or incidental, shall be finally decided.
One who holds only an equity, is not tenant of the freehold. The fee is in another. Unless therefore, the facts in this case, create a legal presumption, that the legal title is in Gaines, this writ could not be prosecuted against him.
This is a question of law.
The infirmities and necessities of mankind, render it necessary, that some general and arbitrary principle, shall supply the place of moral, individual belief, after a long lapse of time. This is legal pre *107 ¡sumption. It is established for the security and repose of ancient ■ rights, muniments of which, and the personal recollection of which, may be lost irretrievably, in the revolution of many years. Hence, under, particular circumstances,a patent, a fine, a decree may be presumed.
Possession by purchaser, uninterruptedly, for 30 ¡ ears, will entitle him to join the mise in a writ of right; and if writ, sued out, against his vendor or his heir, either might plead tenancy of the freehold in the purchaser, as conveyance would be pre-, sumetl.
Fifty years, a bar to heirs w ho demand in a writ of right, upon the seisin of their ancestor, he having been seised within 3d years prior to his death. A seised of land, conveys to B: B. reoonveys: A does not lose the benefit of bis original seisin: but may maintain a writ of right upon such seisin at any time within ■ 30 years after ouster.
*107 A possession of thirty yéars, by a purchaser who held a bond fur a title, would be sufficient, in the absence of any controuling circumstance, to create a legai presumption of a conveyance, to the possessor of the legal title. In such a case, it is not only necessary, for peace and justice, that such a presumption should arise, but it is intrinsically probable, that a deed was made. See X. Johnson, 377; XI. Ib. 456; III. Mass. Rep’s. 399; Hepburn and Dundas vs. Auld, v. Crunch, 262.
In the case, in Cranch, a deed of partition was presumed, in less than thirty years. As the law presumes, that to have been done, which ought to have been done, and as a vendor, who executed his bond for a title, ought to convey, it .should be presumed, in thirty years, if not sooner, that the deed was made, if the purchaser' enjoyed the possessson’all the time, claiming the land as his own.
There may be circumstances which will negative this inference of law. But none of them appear in this case. It is our opinion, therefore, that Gaines should be considered as the tenant of the freehold. From any thing which appears to us, his vendor could never recover the land from him, and, therefore, could not be affected by a judgment against him, in this suit. If the writ had issued against Ruddle’s heirs, they might have pleaded success/ally, that the freehold was in Gaines.
The limitation is the next question which occurs.
The demandants insist, that fifty years, is the limitation in this case. The tenant endeavors to maintain, that it is only thirty years. Whether it be fifty or thirty, depends on, whether the demandants have a right to recover on the seisin of their ancestor, in his own right, under his patent.
The ancestral seisin was never suspended for an instant. T. Conn was never out of possession. He *108 could, in his lifetime, have maintained a writ on his own seisin, under his patent.. And he could have done so, at any time within thirty years. The land was cast by descent on the demandants. They held as heirs not as purchasers. The limitation commenced in 1788, when G. Ruddell took possession. T. Conn,.by selling the land,and purchasing it again, did not forfeit his seisin, before 1788., The demandants would not be barred by less than fifty years, because their ancestor had beer), seised. Thirty years had not barred his right at hia death. This point is expressly-decided by this court, in the case of Conn’s heirs vs, Manifee, 11. Marsh.. 399. The only difference between, that case, and this,. is, that Manifee was tenant in thaty Gaines in this. If T. Conn had not entered, before the entry, under the junior patent, his heirs would be barred, because his right of entry would have been barred; Bedinger vs. Rickets, II. Marsh. 34-; and consequently he never could have been seised.
Possession by the junior patentee, within, the interference, is co-extensive with the bounds of his patent. But if the elder patentee entered afterwards on the land, common to both patents; the possession of the junior patentee, would be restricted to his enclosure, Hord vs. Bodley, V. Littell, 68; Smith, &c. vs. Morrow, Ib. 210. Taylor vs. Shield’s heirs, &c. Ib. 296.
If the elder patentee take possession of land, not covered by the junior patent, the previous possession of the junior patentee remains, by construction of law, co-extensive with his boundary. Fox vs. Hinton, IV. Bibb, 559; Smith’s heirs vs. Lockridge, III. Littell, 21.
But if the elder patentee, enter first, though not within the lines of the junior patent, his possession is limited only by the boundary of his patent. He is then seised of his whole tract. But a subsequent entry of the junior patentee, on the land common to both patents, is an ouster to the extent of the interference, and twenty years possession by him, will toll the right of entry.
Although then, T. Conn had lost his right of entry, on the interference, before his death, yet, as he had first been seised of the whole tract, by being settled *109 on a part, before the junior patentee took possession of the interference, his right to a writ of right, was pot barred, until thirty years after 1788, when die entered. For having been seised, he could have his writ of right, on that seisin, at any time within thirty years; although having lost his right of entry, he could not have maintained ejectment.
years portion, a bar to writ of r5f:ht> ^ ^¿'not'been seised of the land within 30 years. Neither the j-^jtltionnor Jhe champer-iy acts of 1824, nor of 1 ’app y’
Wickliffe, for appellant; Chinn, for appellee.
If he had not been possessed before the entry of Ruddle, he could not have maintained his writ of right, after twenty years possession, by Ruddle, or those claiming under him; because, then he could not enter, and acquire seisin; and as he had never been seised of the interference, of course, he could maintain no suit, as decided in Bedinger vs Rickets.
But having, at his death, a right to his writ of right the demandants, as his heirs, may have it, within fifty years. T. Conn, could not have maintained a writ of right on the seisin of J. Conn and Flournoy, II. Saunders, 45, n. 4. But he could have maintained it on his own antecedent seisin. That right descended to his heirs.
The seven years limitation, cannot apply. It is admitted that some of the demandants have been infants, This protects the right of all. Nor can the Champerty act of 1825, have any eflfeet. That was not intended to be applied to the state courts.
The Champerty act, of 1824, has no application, because, the improvement required by it, was made. That does not require more than one improvement, on pne tract. Conn lived on the tract, and improved it.
The only object of this act, was to enforce the occupant acts of 1812-16, and 19, and repeal in consideration thereof, that of 1820. The act of 1824, can have no operation, if the successful claimant will agree to submit to the acts of 1812-16, and 19.
As Conn had improved the land, his heirs are not within the provisions of the act of 1824.
Because the issue on the plea in abatement, was immaterial, the judgment is reversed, and the cause remanded, for further proceedings.